UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CARLOS ZALDIVAS, #228800**                                          **CIVIL ACTION**

**VERSUS**                                                                      **NO. 06-1600**

**BURL CAIN, WARDEN**                                                 **SECTION "C"**
**LOUISIANA PENITENTIARY**

## ORDER AND REASONS

Before this Court is a petition for habeas corpus relief by Mr. Carlos Zaldivas pursuant to 28 U.S.C. § 2254. As grounds for relief, petitioner claims that his due process and fair trial rights were violated when: 1) the trial court erroneously instructed the jury on the elements of attempted second-degree murder; 2) he received ineffective assistance of counsel at trial; 3) there was insufficient evidence to convict him; and 4) he received an excessive sentence.

Upon a thorough review of the trial, direct appeal, and post-conviction records, the habeas petition and memoranda, and applicable law, the Court has determined that petitioner's habeas corpus petition is without merit. For the reasons set forth below, this petition is **DENIED**.

**I.     Background and Procedural History**

Petitioner is a state prisoner at Louisiana State Penitentiary in Angola.[1] He was charged with attempted second-degree murder. The following relevant facts are edited from the opinion issued by the Louisiana Fifth Circuit Court of Appeal:

---

[1] Fed. Rec. Doc. 1, Petition for Writ of Habeas Corpus, *Zaldivas v. Cain*, No. 06-1600.

Darryl Butler testified that, in June or July of 1999, he allowed defendant, Carlos Zaldivas, to move into his apartment at 3525 North Arnoult Boulevard in Metairie. Zaldivas had been living nearby with his parents, and he told Butler he was no longer welcome there. The two men agreed that Zaldivas would stay at the apartment for one month, during which time he would look for a permanent place to live. Zaldivas further agreed to pay Butler $50 each week for expenses. Butler testified that, for a time, he and Zaldivas shared an intimate relationship.

Butler stated that Zaldivas never complied with their agreement. Zaldivas stayed on for more than a month, and failed to contribute toward apartment expenses as promised. On Monday, November 15, 1999, Butler told Zaldivas he was no longer welcome to live there. Zaldivas became very upset, and told Butler that he would leave before he was put into jail for murder. When Butler returned home from work the following day, he found Zaldivas had moved his belongings out, and had left his apartment keys on a counter.

On November 19, 1999, Butler arrived home at about 10:00 p.m., after having visited his mother in the hospital. He watched television for several hours. During that time his telephone rang several times, but he did not answer the calls. By about 3:00 a.m. on November 20, Butler was sleeping on the couch. There was a knock at the front door, which Butler recognized as the knock Zaldivas used. Butler decided not to open the door. Five minutes later, the front window of the apartment was broken. Butler went to the window to investigate, and dialed 911 on his cordless telephone.

Zaldivas entered the apartment through the window. Butler could see that Zaldivas had removed the screen from the window and had broken the glass. Zaldivas berated Butler for not answering the door or telephone. Zaldivas took Butler's telephone. He then pulled an object from his pocket and used it to slash Butler's throat. Butler testified that the weapon appeared to be a carpet knife with a razor blade in it. Butler raised his arm to defend himself, and Zaldivas cut it with the weapon. Zaldivas continued trying to cut Butler. Eventually Butler managed to force Zaldivas out of the apartment. Butler then locked himself in his bathroom. He looked in a mirror and saw that he was bleeding profusely from his neck. He went outside to seek help.

Deputy Gerald Favalora of the Jefferson Parish Sheriff's Office testified that he and his partner, Deputy Weaver, responded to a 911 hang-up call at the North Arnoult apartment complex in the early morning hours of November 20, 1999. A Deputy Morris also reported to the scene. Morris held a towel to Butler's neck to help stanch the bleeding. Favalora noted that the victim had a laceration on his neck from below his left ear to his chin.

Emergency medical personnel were called, and Butler was transported to East Jefferson General Hospital, where he was treated by Dr. Raoul Guevera. Butler informed the doctor that his former roommate had broken into his apartment, threatened his life, and cut him with a razor knife. Dr. Guevera testified that the laceration to Butler's neck was close to the carotid artery, and that an injury to that artery would have caused Butler to bleed to death within minutes.

Favalora took a brief statement from Butler before he was taken to the hospital. The victim reported that his former roommate had broken the window to

his apartment, produced a knife, and slashed his neck. Butler named Carlos
Zaldivas as the perpetrator of attack.

On November 29, 1999, Detective Craig Gardner met with Butler and
showed him a photographic lineup. The victim positively identified Zaldivas as
his attacker. Butler told Gardner that Zaldivas had broken into his apartment and
sliced him with a razor blade. Detective Gardner testified that officers tried
unsuccessfully to locate Zaldivas at his parents' address. Zaldivas was ultimately
arrested on January 1, 2000.

Angela and Christopher Mayer, Zaldivas' teenage niece and nephew,
testified on his behalf. They stated that on the night of November 19-20, 1999,
Zaldivas slept at their house in Marrero.

At trial, Zaldivas vehemently denied ever having intimate relations with
Butler, and testified that he moved out of the apartment because he disapproved of
Butler's lifestyle. Zaldivas testified that he did not threaten or attack Butler. He
further posited that Butler was attacked by men to whom he owed money.[2]

On February 22, 2002, the jury found him guilty as charged. Petitioner was sentenced to 50 years in prison without benefit of parole on February 28, 2002.[3] On December 30 2002, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[4] The Louisiana Supreme Court denied writs on October 17, 2003.[5] Petitioner filed an application for post-conviction relief which was denied as to his ineffective assistance claim by the trial court on February 9, 2004; petitioner was given 30 days to provide written reasons for his failure to raise the claim of improper jury instructions on appeal.[6] On March 8, 2004, the trial court found petitioner's claim of improper jury instructions was not a result of ineffective assistance of appellate counsel and should therefore be denied, but nevertheless denied the claim on the merits as well.[7] The Louisiana Fifth Circuit Court of Appeal denied writs on April 13, 2004,[8] and the Louisiana Supreme Court denied writs on April 8, 2005.[9] Petitioner then filed his federal application for habeas corpus on February 15, 2006.[10]

---

[2] State Rec. Vol. 1, *State v. Zaldivas,* 836 So.2d 577, 579 -580 (La.App. 5 Cir. 2002).
[3] *Id*.
[4] State Rec. Vol. 1, *State v. Zaldivas,* 836 So.2d 577, 579 -580 (La.App. 5 Cir. 2002).
[5] State Rec. Vol. 1, *State v. Zaldivas*, 2003-KO-0705, 855 So.2d 757 (La. 2003).
[6] State Rec. Vol. 2, *State v. Zaldivas*, 00-967, Order, February 9, 2004.
[7] State Rec. Vol. 2, *State v. Zaldivas*, 00-967, Order, March 8, 2004.
[8] State Rec. Vol. 2, *State v. Zaldivas,* 04-KH-389 (La.App. 5 Cir. 2004).
[9] State Rec. Vol 2, *State ex rel Carlos Zaldivas v. State of Louisiana*, 2004-KH-1306 (La. 2005).
[10] Fed. Rec. Doc. 1, Petition for Writ of Habeas Corpus, *Zaldivas  v. Cain*, No. 06-1600.

**II.     Jurisdiction**

Jurisdiction is proper under the Antiterrorism and Effective Death Penalty Act (AEDPA) if the petitioner is "in custody" under the conviction he is attacking.[11]  Petitioner Zaldivas is confined at the Louisiana State Penitentiary in Angola, therefore jurisdiction is proper.

**III.    Venue**

Venue is proper under AEDPA in the district where the inmate is in custody or where the state court conviction and sentence were obtained.[12]  Petitioner Zaldivas was convicted and sentenced in Jefferson Parish, therefore venue in the Eastern District of Louisiana is proper.

**IV.    Timeliness**

The state submits that the petition is untimely, and after reviewing the record this Court disagrees. Generally speaking, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a petitioner bring his Section 2254 claims within one year of the date on which his conviction became final.[13]  Pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's one-year limitation period for seeking federal habeas corpus relief commenced running on the date the judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review."  Petitioner's direct appeal was denied by the Louisiana Supreme Court on October 17, 2003 and he did not appeal to the United States Supreme Court. Petitioner's conviction became final ninety days after the Louisiana Supreme Court denied his application for supervisory writs, on January 14, 2004.

---

[11] 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a).
[12] 28 U.S.C. § 2241(d).
[13] 28 U.S.C. § 2244(d).

4

On this date, the one-year statute of limitations for filing a federal habeas corpus petition began to run.[14]  AEDPA's statute of limitations is tolled for the period during which a properly filed application for post conviction relief or other collateral review attacking a conviction or sentence is pending in state court.[15]  Petitioner filed a post-conviction application on January 20, 2004, or 6 days later.  The statute was tolled until April 8, 2005, when the Louisiana Supreme Court denied writs. Petitioner filed his federal habeas petition on February 15, 2006, 313 days later. A total of 319 days of the 365-day period elapsed prior to petitioner's habeas petition.

The state argues that petitioner's application for writs to the Louisiana Supreme Court was untimely, because it was signed 5 days late, on February 4, 2003, and therefore petitioner's conviction became final on January 13, 2003. However, since the Louisiana Supreme Court accepted the writ, and did not dismiss it as untimely, the statute of limitations only ran until the date the petitioner signed his application, or February 4, 2003, when the tolling period began again.[16]  Using the state's argument would add 21 days to the statutory period, for a total of 340 elapsed days. In neither case was the one-year statute of limitations exceeded.

For the reasons stated above, the Court finds that Mr. Zaldivas's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 is timely.

---

[14] See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999).
[15] See *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. § 2244(d)(2).
[16] See *Salinas v. Dretke*, 354 F.3d 425, 430 (C.A.5, Tex. 2004) for the effect of granting an out-of-time application for review in state courts: "[N]othing in AEDPA allows for a properly initiated limitations period to be terminated altogether by collateral state court action. Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review."

**V.     Exhaustion**

Petitioner has exhausted available state remedies as required by AEDPA.  Under AEDPA, a petitioner must first exhaust his remedies in state court before seeking habeas relief from the federal courts.[17]  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."[18]  Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal habeas petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules.[19]

Petitioner presents four claims for review in his petition as listed above.  All were raised in his application for writs of certiorari to the Louisiana Supreme Court on his direct appeal or in his application for post conviction relief. The state argues the claims were not exhausted because his writ application was not timely, as discussed above. The Court finds petitioner's application was not denied as untimely by the Louisiana Supreme Court, and so the claims were presented to the state's highest court. In addition, the state claims that several of petitioner's claims of ineffective assistance of counsel are not exhausted because they were not argued or briefed by the petitioner. The Court disagrees, and references petitioner's application for post conviction relief,[20] where the issues are presented and argued.

Accordingly, petitioner has satisfied AEDPA's exhaustion requirement.  Therefore, the Court will address petitioner's claims on the merits.

---

[17] 28 U.S.C. § 2254(b)(1)(A).
[18] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).
[19] *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).
[20] State Rec. Vol. 2, Application for Post Conviction Relief.

## VI.     Standard of Review

AEDPA comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of fact and law.[21] Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).[22] As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[23] The United States Supreme Court has noted the following:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams v. Taylor*, 529 U.S. 362 (2002) that an unreasonable application is different from an incorrect one.[24]

As to questions of fact, factual findings are presumed to be correct, and a federal court will give great deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[25]

---

[21] 28 U.S.C. § 2254(d): An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
[22] *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).
[23] 28 U.S.C. § 2254(d)(1).
[24] *Bell v. Cone*, 535 U.S. 685, 694 (2002), internal citations omitted.
[25] 28 U.S.C. § 2254(d)(2); see also *Hill v. Johnson*, 210 F.3d 481, 485; 28 U.S.C. § 2254(e)(1).

7

**VII.   Law & Analysis**

**(1) Petitioner argues that the trial court erroneously instructed the jury on the elements of attempted second-degree murder.**

Generally, the submission of improper jury instructions in a state criminal trial is not a basis for federal habeas relief.[26] Federal habeas relief is warranted only where the petitioner has demonstrated that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."[27] When reviewing whether an allegedly erroneous jury instruction violated due process, the court's allegedly improper jury instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record."[28] The court inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."[29] Any errors are subject to harmless-error analysis.[30]

This claim was raised in petitioner's application for post conviction relief, after which the trial court ordered him to provide written reasons for not raising this matter on appeal. The petitioner complied with the order and argued ineffective assistance of appellate counsel. Thereafter, the trial court denied petitioner's claim of ineffective assistance, finding it met neither the *Strahan*[31] nor the *Strickland*[32] standards. Nevertheless, the trial court denied the improper jury instructions claim on the merits as well:

> However, out of an abundance of caution, this Court will address defendant's claim of unconstitutional jury instructions. In his application, defendant alleges that the Court gave misleading and confusing jury instructions regarding the definition of specific intent and general intent. The court in State v. Lennon, 661 So.2d 1047, 95-0402 (La.App. 4 Cir. 9/15/95) addressed the issue of

---

[26] See *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); see also *Weeks v. Scott*, 55 F.3d 1059, 1065 (5th Cir.1995).
[27] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).
[28] *Id.*
[29] *Id.*
[30] *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir.2002).
[31] *State v. Strahan*, 325 So.2d 231 (La. 1975).
[32] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

8

> unconstitutional jury instructions. In its decision, the Court held that the (sic) it must be determined whether it is reasonably likely that the jury applied the challenged instruction in an unconstitutional manner, not whether it is *possible* that the jury misapplied the instructions.
>
> In the instant matter, defendant has made numerous speculative statements about the jury's level of comprehension regarding the jury instructions. However, he has not provided this Court with evidence to suggest that there is a reasonable likelihood that the jury applied the instructions in an unconstitutional manner. The defendant bases his entire argument on speculation. Therefore, the defendant has failed to meet his burden of proof in this claim.[33]

Writs were denied by the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court.

The state argues that this claim is procedurally defaulted, because the trial court procedurally barred it when ordering the petitioner to provide written reasons for his failure to raise the issue on appeal. The Court disagrees. As discussed earlier, after the petitioner complied with the court's order, the trial court made its determination. It denied the claim of ineffective assistance of appellate counsel for failure to raise the claim on appeal and also denied the claim itself on the merits.

The Court finds that the petitioner's claim is without merit because there was no error in the actual jury instructions. The petitioner argues that the trial judge read the statutory definition of second-degree murder followed by the statutory definition of attempt, and this constituted error because attempted second-degree murder requires a specific intent to kill, and not merely to inflict great bodily harm. However, the trial judge was addressing the jury before the trial began when he read them the information about which petitioner complains, and told them he would present them with the law at the close of the trial. The actual jury instructions, provided by the judge to the jury before they began their deliberations, contained the proper language as required by Louisiana State law:

---

[33] State Rec. Vol. 2, *State v. Zaldivas*, 00-967, Order, March 8, 2004.

> The Bill of Information charges the defendant, Carlos Zaldivas, with the Attempted Second Degree Murder of Darryl Butler.
> Second Degree Murder is the killing of a numan being when the offender has a specific intent to kill.
> An attempt is defined as follows:
> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose…
> Thus in order to convict the defendant of Attempted Second Degree Murder you must find:
> 1. that the defendant acted with a specific intent to kill and
> 2. that the defendant did or omitted to do an act for the purpose of and tending toward the commission of the crime of second degree murder.[34]

The jury instructions were without error, as they expressly cited a specific intent to kill was required, and omitted any reference to the infliction of great bodily harm. Considering the jury instructions as a whole, there was no reasonable likelihood the jury would have applied the challenged instruction in an unconstitutional way. This claim is without merit.

**(2) Petitioner argues that he received ineffective assistance of counsel at trial for failure to prepare and call witnesses, to put on an alibi defense, and to object to the improper jury instructions.**

A claim of ineffective assistance of counsel is a mixed question of law and fact.[35] Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[36]

---

[34] State Rec. Vol. 1, Jury Instructions, p.4-5.
[35] *Moore v. Co*ckrell, 313 F.3d 880, 881 (5th Cir. 2002), cert. denied, 538 U.S. 969, 123 S.Ct. 1768 (2003).
[36] 28 U.S.C. § 2254(d)(1).

In *Strickland* the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.[37] A petitioner seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense.[38]

Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."[39] If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.[40]

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.[41] "Counsel's performance is deficient if it falls below an objective standard of reasonableness."[42] Petitioner must overcome a strong presumption that the counsel's conduct falls within a wide range of reasonable representation.[43] To prove prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[44] A reasonable probability is one "sufficient to undermine confidence in the outcome."[45]

The Petitioner raised ineffective assistance in his application for post conviction relief, claiming deficient performance because counsel failed to prepare and call witnesses, failed to put on an alibi defense, and failed to object to the erroneous jury instructions. The district court denied the ineffective assistance claims on the merits:

---

[37] *Strickland v. Washington*, 466 U.S. 668 (1984).
[38] *Id*. at 697.
[39] *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).
[40] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).
[41] *Styron v. Johnson*, 262 F .3d 438, 450 (5th Cir.2001), cert. denied, 534 U.S. 1163 (2002).
[42] *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998).
[43] *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).
[44] *Strickland*, 466 U.S. at 694.
[45] *Id*.

> In the instant case, none of the defendant's claims seem to go beyond strategic choices made by his counsel at the time of the defendant's trial. The defendant's claims are essentially with his counsel's decisions regarding objections raised and witnesses called at trial. These are considered trial tactics for purposes of evaluating the performance of defendant's counsel. Thus defendant's claim must fail because his counsel's action at trial was considered trial tactics and under the Strickland test, the defendant has failed to meet the two-prong test.[46]

Writs were denied by the Louisiana Fifth Circuit Court of Appeal and the Louisiana Supreme Court.

In his habeas petition petitioner argues the identical issues. Petitioner fails to demonstrate that counsel's performance was deficient. The failure to call certain witnesses is a trial strategy. Defense counsel presented a defense and called witnesses to testify to petitioner's alibi defense. His niece and nephew testified that he lived with them at the time of the crime, and the house was locked each evening for security purposes, so no one could enter or leave the premises. Under cross examination, the prosecution was able to draw out that neither witness was actually in the presence of the petitioner at the time of the crime. Defense counsel called the petitioner's employer, and his failure to request that the employer bring check stubs or 1099 forms did not constitute deficient performance. Whether petitioner worked on the days before or after the crime has no bearing on his alibi defense, since petitioner never claimed he was at work during the crime, and the employer testified that he was not in the petitioner's presence at the time of the crime. The petitioner testified that he was living at his sister's house at the time of the crime. The jury chose to believe the testimony of the victim and police over that of the alibi witnesses and petitioner. Petitioner fails to establish that counsel's behavior fell outside the wide range of reasonable representation. In addition, petitioner fails to establish any prejudice to him as a result of counsel's performance. Finally, since the Court found no error in the jury instructions, defense counsel's failure to object to them does not constitute deficient performance.

---

[46] State Rec. Vol. 2, *State v. Zaldivas*, 00-967, Order, February 9, 2004.

The petitioner fails to satisfy the *Strickland* test that counsel's behavior was deficient and prejudicial. The Court finds nothing contrary to, or involving any unreasonable application of, federal law, and so defers to the state court decisions denying relief for petitioner's claims of ineffective assistance of counsel.

**(3) Petitioner argues there was insufficient evidence to convict him.**

A claim of insufficiency of the evidence is reviewed by a habeas court under the *Jackson* standard.[47] It is a fundamental principle of American jurisprudence that a criminal defendant may not be convicted absent a finding of guilt beyond a reasonable doubt by the finder of fact.[48] However, a jury's findings on an issue of fact will be upset only where necessary to preserve the "fundamental protection of due process of law."[49]

In reviewing a claim of insufficient evidence, this Court must determine whether, looking at the elements of the offense, and viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[50] This Court's review of factual determinations is limited where petitioner had a full and fair opportunity to litigate the factual issue(s).[51] Petitioner's complaint is that he was charged with and convicted for attempted second degree murder, a violation of Louisiana Revised Statutes § 14:30.1[52] and § 14:27[53] when the evidence was legally insufficient.

---

[47] *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).
[48] *Jackson*, 443 U.S. at 316-17, 99 S.Ct. at 2787-88, 61 L. Ed. 2d 560.
[49] *Jackson* at 319, 99 S.Ct. at 2789, 61 L. Ed. 2d 560.
[50] *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000).
[51] See 28 U.S.C. § 2254(d), requiring a general presumption of correctness as to factual findings.
[52] Second degree murder
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill… LSA-R.S. 14:30.1.
[53] Attempt; penalties; attempt on peace officer; enhanced penalties

This claim was raised on appeal. The Louisiana Fifth Circuit Court of Appeal affirmed his conviction, finding:

> The state's only eyewitness was the victim, Darryl Butler. Jurisprudence provides that in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. Butler positively identified Zaldivas as his attacker on several occasions. He gave Zaldivas' name to officers who responded to his attempted 911 call and to the doctor who treated him in the hospital emergency room. He identified Zaldivas in a photographic lineup and at trial. It is undisputed that Zaldivas and Butler knew each other for some time before the stabbing, so there seems to be no question of Butler's ability to recognize Zaldivas…
> Zaldivas argues that he was able to refute Butler's testimony at trial…
> None of Zaldivas' witnesses was with him at 3:00 a.m. on November 20, 1999, and thus none of them could testify to a certainty that Zaldivas was at the Lee Drive house at the time the attack on Butler took place. Moreover, their testimony conflicts with Zaldivas' own testimony that he lived with Darryl Butler during November of 1999.
> The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of witnesses, it goes to the weight of the evidence, and is not part of a sufficiency determination. We need only make a determination as to sufficiency, not witness credibility. Based upon our review of the record, we find that the state provided sufficient evidence under the *Jackson* standard to support a conviction for attempted second degree murder. This assignment of error merits little consideration.[54]

Petitioner raises the same argument in his habeas petition, and the record does not support his claim that he successfully rebutted the state's case. Petitioner had a full and fair opportunity to litigate this issue. At trial, the prosecution provided evidence of petitioner's breaking into the victim's home and slashing his throat in such a manner that the victim was lucky to survive the attack. The victim identified the petitioner as his former roommate, provided the identification to the emergency medical personnel and police, and testified at trial. The

---

A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose…. LSA-R.S. 14:27.
[54] State Rec. Vol. 1, *State v. Zaldivas,* 836 So.2d 577, 582-83 (La.App. 5 Cir. 2002).

defense presented an alibi defense and also offered the petitioner's testimony that the victim had been targeted by unknown assailants because of his lifestyle. The jury believed the prosecution's case over the defense's, in the face of ample evidence that petitioner was the perpetrator of the crime. The Court finds that, viewing the evidence in a light most favorable to the prosecution, a reasonable finder of fact could find that the elements of attempted second degree murder were proved beyond a reasonable doubt.

The Court defers to the state court decision, finding nothing based on an unreasonable determination of the facts in light of the evidence presented at trial.

**(4) Petitioner argues he received an excessive sentence.**

A federal court considering a habeas petition will not upset a state sentence within the statutory limits unless the sentence is so disproportionate to the offense as to be completely arbitrary and shocking.[55] The statutory penalty for conviction of attempted second degree murder is a sentence range of from 10 to 50 years imprisonment.[56] A sentence within the statutory limits is entitled to a presumption of constitutionality.[57] The "burden is on the defendant to rebut the presumption of constitutionality by showing that he is exceptional."[58]

The petitioner raised this issue on his direct appeal. The Louisiana Court of Appeal for the Fifth Circuit upheld his sentence, finding:

---

[55] *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975).
[56] B. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence…LSA-R.S. 14:30.1.
D. Whoever attempts to commit any crime shall be punished as follows: (1)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence… LSA-R.S. 14:27.
[57] *Nicks v. Cain*, 2005 WL 1578024, 8 (E.D. La. 2005).
[58] *Nicks v. Cain*, 2005 WL 1578024, 8 (E.D. La. 2005).

15

In his reasons for sentencing, the trial judge commented:

"Mr. Zaldivas on the stand said he didn't feel sorry for this victim that this horrible crime had happened to, so it goes beyond him saying he committed the crime and I'm sorry. Certainly he denied that he committed the crime. The jury found that he did in fact commit the crime…

The victim of this crime was horribly wounded. It is only but for chance, or by the grace of God that Mr. Zaldivas was charged with attempted second degree murder and not second degree murder.

The scars that remain for the rest of the victim's life are horrible. Mr. Zaldivas is fortunate that by that chance this victim survived the horrible act."

It does not appear that the trial court abused its discretion in imposing the maximum sentence. Defendant's date of birth is listed on the bill of information as July 6, 1961, making him 38 years of age at the time of the offense. This was not the act of an impetuous youth… The trial court's primary concerns were the brutality of the attack, and Zaldivas' obvious lack of remorse.

In his testimony at trial, Zaldivas showed a great deal of contempt for the victim. Zaldivas expressed his feelings in his responses to the prosecutor's cross-examination:

> "Q. Did you care whether or not this happened to Mr. Butler or did you think he deserved this, because of his lifestyle, according to you?
> A. No, sir.
> Q. He did not deserve this?
> A. I didn't care about Mr. Darryl.
> Q. You didn't care about Mr. Darryl?
> A. No, sir."

Based on the foregoing, we find that Zaldivas' sentence is not constitutionally excessive.[59]

Here, the petitioner again argues that his sentence was excessive, but offers no evidence of any alleged mitigating factors the judge should have considered and did not. The trial judge explained his reasons for pronouncing the 50-year sentence, and the appellate court affirmed the sentence, which fell in the statutory range, albeit at the maximum. This Court defers to the state court on this claim, finding nothing contrary to, or involving any unreasonable application of, clearly established Federal law.  Petitioner has failed to establish that his presumptively constitutional sentence was excessive, that his sentence was completely arbitrary or shocking, or that his sentence fell outside the statutory limits.

---

[59] State Rec. Vol. 1, *State v. Zaldivas,* 836 So.2d 577, 582-84 (La.App. 5 Cir. 2002).

16

**VIII. Conclusion**

Having considered the complaint, the record, the evidentiary hearing transcript, and the applicable law, it is determined that petitioner has failed to demonstrate that his state conviction and sentence present grounds for the relief requested.  Accordingly, **IT IS ORDERED** that the petition of CARLOS ZALDIVAS for writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**.  Judgment will be entered accordingly.

New Orleans, Louisiana this 24th day of May, 2007.

_____
HELEN G. BERRIGAN
U.S DISTRICT JUDGE